**MARICOPA COUNTY MUNICIPAL WATER CONSERVATION DISTRICT NUMBER ONE, Appellant,**

v.

**J. C. LOONEY, Carl J. Klinger, O. W. Bauer, G. M. Dunne and John G. Elwell, on behalf of themselves and all others similarly situated, Appellees.**

**No. 14000.**

United States Court of Appeals, Ninth Circuit.

Feb. 15, 1955.

Kramer, Roche & Perry, Phoenix, Ariz., for appellant.

McCall, Parkhurst & Crowe and Paul B. Horton, Dallas, Tex., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

This is a class suit brought by appellees as holders of bonds of appellant District on behalf of themselves and all others similarly situated. The purpose of the action was to recover from the District interest of 2½%, represented by coupons attached to the bonds, payable June 30, 1950. The court gave judgment for appellees and ordered the District to assess and collect, in the manner provided by law, *ad valorem* taxes on the taxable property of the District sufficient to raise the necessary amount.

The District contends that but ½ of 1% was payable as interest for the first 11 months of the year in question although conceding that the 2½% rate called for in the coupons was payable for the final month. The background of the case need not be developed at any great length since the subject matter has no general importance. The District's contention rests on the terms of restrictions imposed by the Reconstruction Finance Corporation in connection with a loan of $300,000 of "new money" it made to the District in 1944. This loan was to be repaid in six annual installments, the first of which was payable June 1, 1945, and the last June 1, 1950. There was no default in respect of the payment of these installments or of the interest thereon, and the final payment of June 1, 1950 completely retired the loan.

As part of the agreement with the RFC the District was to issue "new bonds," as they were termed, for the purpose of retiring an existing issue held by members of the general public. Paragraph 17 of the contract reads in material part: "Concerning the New Bonds: Borrower shall cause to be issued another series of bonds (herein called 'New Bonds') in a principal amount not to exceed $1,114,500. New Bonds shall bear inteerst at a rate not exceeding ½ of 1% per annum until such time as Borrower shall have repaid the $300,000 loan herein referred to with interest thereon and shall not be in default with respect to any principal or interest payment on the Refunding Bonds, and thereafter interest may be paid on New Bonds at a rate not exceeding 3% per annum so long as any Refunding Bond remains outstanding." (The "new bonds" referred to are those

now held by appellees and others on whose behalf they sue.)

Before an irrigation district such as the present may issue bonds, the Arizona law requires that the electors approve any contract in connection with the issue and also approve the details thereof. Notice of the election is required to be given by posting and publication. The notice must recite specifically "the maximum amount, interest rate and maturities of any new bonds that may be issued by the district pursuant thereto."

The requisite notice was duly posted and published, and at the election the proposal was approved. The form of the notice given conformed in all respects with the statutory requirements. It stated that the $300,000 of "new money" bonds being purchased by the RFC would mature serially on June 1 of the years 1945 to 1950, inclusive. In respect of the proposed issue of the $1,145,500 of new bonds it stated that the interest rate was to be "one-half of one per cent per annum, payable on June 30th of each of the years 1945 to 1949, both inclusive, 2½% per annum, payable June 30th, 1950, 3% per annum, payable June 30th in each year thereafter up to and including the year 1979, and 4% per annum payable June 30th, each year thereafter. Subject to the provision in the authorizing resolution that no more than one-half of one per cent per annum shall be paid on said bonds until the $300,000.00 principal amount of bonds issued for sinking and equipping additional wells and lining ditches for irrigation purposes shall be fully paid."

Pursuant to the authorization given by the electors the District's board adopted a resolution issuing the "new bonds" and prescribing their details. The resolution was in harmony with the proposal approved at the election. It stated that the issue in question "shall bear interest from the date thereof, payable annually on June 30 of each year, at the maximum rate of one-half of one per cent (½%) per annum, to and including June 30, 1949, at the maximum rate of two and one-half per cent (2½%)

per annum from June 30, 1949, to June 30, 1950, at the maximum rate of three per cent (3%) per annum from June 30, 1950 to and including June 30, 1979, and thereafter at the maximum rate of four per cent (4%) per annum until the principal is paid in full or said bonds are retired pursuant to the provisions thereof. Provided, however, (a) that the New Bonds shall not bear interest exceeding one-half of one per cent (½%) per annum until such time as the District shall have paid principal and interest of or canceled the $300,000.00 of the Refunding Bonds maturing 1945 through 1950, and shall not be in default with respect to any principal or interest of said Refunding Bonds." The bond form as prescribed in the board's resolution and the bonds as actually issued and delivered specifically stated the obligation of the District to pay interest thereon in the terms of the resolution itself.

As already observed, the attached interest coupons for the year ending June 30, 1950, called for the payment of interest at the 2½% rate. Prior to the time these coupons matured all conditions relating to their payment had been fully met. Had this not been true no interest at all would have been payable. We agree with the trial court's interpretation of the several instruments involved. They reveal with reasonable clarity an intention on the part of the District and its electors that the interest rate of 2½% was to apply for the full year in question unless, as was not the case, a default had occurred in respect of the RFC indebtedness.

The District further argues that the suit was not properly brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. We see no merit in the argument. It objects also to the requirement of the judgment for the levy of *ad valorem* taxes. Appellees concede that this objection is well taken, and accordingly the term *"ad valorem"* is ordered stricken. As the judgment will read with this deletion the levy is to be made "in the manner provided by law."

Affirmed.